# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAYMOND P. BIELATA,          )
          Plaintiff        )
        vs.                 )     Civil Action No. 05 - 183 - Erie
                               )
CRIME VICTIM CENTER OF      )
ERIE COUNTY, INC., and         )
SUSANNE POROWSKI,         )    <u>Jury Trial of 12 Demanded</u>
          Defendants    )

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR PARTIALLY DISMISS COUNTS I, II, IV, V AND VI OF COMPLAINT

**A.**    <u>**Requested dismissal of claims under the ADEA for emotional distress and punitive damages (Count I).**</u>

     **(1)**    <u>**Punitive Damages**</u>

Though many courts addressing the issue have held that punitive damages are not

recoverable under the ADEA, the issue has not been definitively resolved by either the U.S.

Supreme Court, the Third Circuit, or by Congress by amendment to the ADEA.  In the absence of

any such prohibition, a claim for punitive damages should not be dismissed, given the clear

language of the Act, which provides that "[a]ny person aggrieved may bring a civil action in any

court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of

this chapter." 29 U.S.C. § 626(c)(1).  As noted by the Colorado U.S. District Court with regard

to this broad, unlimited language, providing for both legal and equitable relief, punitive damages

are a "legal" remedy, and should therefore be available under the ADEA.  <u>See</u>, <u>Kennedy v. Mtn.</u>

<u>States Tel. & Telegraph Co.</u>, 449 F.Supp. 1008, 1009-1011 (D. Colo. 1978).  The Court,

acknowledging that many courts had held to the contrary, also cited five cases where courts had

allowed claims for punitive damages under the ADEA.  Id. at 1010, citing Walker v. Pettit

Construction Co., 437 F.Supp. 730 (D.S.C. 1977); Coates v. National Cash Register Co., 433

F.Supp. 655 (W.D. Va. 1977); Bertrand v. Orkin Exterm. Co., 432 F.Supp. 952 (N.D.Ill. 1977);

Combes v. Griffin Television, Inc., 421 F.Supp. 841 (W.D. Okl. 1976); and Murphy v. American

Motors Sales Corp., 410 F.Supp. 1403 (N.D.Ga. 1976).

In Murphy, the court found that denying punitives under the ADEA because of the denial

of punitives under Title VII, which often lends construction to issues under the ADEA, was

inappropriate, as Title VII strictly limits available relief to equitable remedies, whereas the

ADEA provides for both legal and equitable remedies.  Murphy, supra, 410 F. Supp. 1403, 1405.

After noting that distinction, the court reasoned that punitive damages are an available legal

remedy, as punitives "have always been recoverable at common law and where not expressly

precluded by a statute which otherwise specifically provides for legal relief, may be recovered

under such a statute in accordance with common law principles."  Id.

To the extent that a jury may find that liquidated damages may not sufficiently deter the

kind of intentional violation of the ADEA alleged by Plaintiff Bielata, they should be allowed to

impose punitive damages if and as appropriate in their discretion, to "effectuate the purposes of

[the ADEA]."  See, 29 U.S.C. § 626(c)(1).

### (2)    Pain and Suffering / Emotional Distress

As is the case with punitive damages, the very language of the ADEA authorizing,

without restriction, such legal and equitable relief as will promote the purposes of the Act, is the

primary cue that damages for pain and suffering and emotional distress, not being disallowed, are

authorized remedies.  See, 29 U.S.C. § 626(c)(1).

2

In light of the Supreme Court's decision in <u>Comm'r of Internal Revenue v. Schleier</u>, 515

U.S. 323, 326, 115 S.Ct. 2159, 2162 (1995), however, Plaintiff concedes that damages for

emotional distress and pain and suffering are not allowed under the ADEA.


B.    **Requested dismissal of claims under the**
      **Erie County Human Relations Ordinance (Count IV).**

Plaintiff Bielata has set forth as Count IV of his complaint a cause of action for

enforcement of the Erie County Human Relations Ordinance ("ECHRO").  Defendants ask the

Court to dismiss this count, arguing that the ordinance does not provide for a "private,

independent cause of action or judicial remedy."  <u>Defendants'Brief</u>, p. 8.

Defendants' argument directly contradicts clear language in the ordinance authorizing

persons aggrieved by its violation to seek relief in court.[1]  The text of Article VI, Section P of the

ordinance, provides for a right of action in court, as follows:

> In cases involving a claim of discrimination, if a complainant
> invokes the procedures set forth in this Ordinance, that individual's
> right of action in the courts of this Commonwealth shall not be
> foreclosed.  <u>The aggrieved person may seek civil enforcement of
> the law or ordinance by commencing a civil action in an
> appropriate court at least one year after the occurrence or
> termination of the alleged discriminatory housing practice.  If the
> court finds that the respondent has engaged in or is engaging in an
> unlawful discriminatory practice charged in the complaint, the
> court shall enjoin the respondent from engaging in such unlawful
> discriminatory practice and order affirmative action which may
> include, but which is not limited to, reinstatement or hiring of
> employees, granting of back pay, compensatory, punitive damages,
> attorneys'</u> fees, or any other legal or equitable relief as the court
> <u>deems appropriate</u>.  (emphasis added).

---

[1]  A photocopy of the Erie County Human Relations Ordinance is attached.

The above-quoted language, especially the underlined portion, explicitly authorizes the private right of court action which Plaintiff has set forth as Count IV of his complaint. It is difficult to imagine a clearer creation of a right for a person aggrieved by a violation of the ordinance to go into court, plead and prove the violation, and request the very same relief requested by Plaintiff Raymond Bielata in the case at bar. The ordinance says that an "individual's right of action in the courts of this Commonwealth shall not be foreclosed, yet Defendants are asking this Court to foreclose that right of action by dismissing Plaintiff's complaint inasmuch as it seeks relief under ECHRO."[2]

By the plain language of the ordinance, an aggrieved person (in both employment and housing contexts) "may seek civil enforcement of the law *or ordinance* by commencing an action in an appropriate court." Id. (emphasis added). That is what Plaintiff has done. The Court may order a wide range of relief, including injunctive and/or legal damages such as back pay, etc. Id. There is no conceivable reason for inclusion of this express authorization to file a civil action to enforce the ordinance, and of these traditional remedies in discrimination cases, other than to allow the very type of claim that Raymond Bielata has asserted in Count IV of his complaint, and it should therefore not be dismissed.

Indeed, while Defendant attempts to distinguish ECHRO from the ADA, Title VII and PHRC statutory language giving rise to private rights of action, it is in reality similar to those

---

[2]      Defendants do not argue that the phrase "courts of this Commonwealth" should support their motion to dismiss, given Plaintiff's election to sue in federal court. That phrase should be understood to include this District Court, given the inclusion of the phrase "appropriate court" in the same Article VI, Section P, this Court's situs in the Commonwealth of Pennsylvania, and this Court's supplemental jurisdiction over state law claims arising out of the same facts and circumstances giving rise to the Court's federal question jurisdiction, as pleaded in Plaintiff's complaint.

statutes in that it plainly provides for the right to sue in court, and it lists the remedies, legal and equitable, that this Court may award.

The vitality of Plaintiff's ECHRO claim is not inconsequential, especially in light of Defendants' efforts to dismiss Plaintiff's claim for puntive damages under other causes of action. The ECHRO provides for the award of punitive damages, and that remedy is important not only to Plaintiff personally, but also as a deterrent to Defendants' misconduct, which, coming from a government agency, is especially repugnant and worthy of being curbed by any and all means, including the imposition of punitive damages if found justified after trial.[3]

### C.    Requested dismissal of Plaintiff's Family Medical Leave Act claims (Count V).

Plaintiff, at this stage of this case, has no means to contest Defendant Crime Victim Center's allegation that it has only 29 employees, below the 50-employee level needed to characterize Crime Victim Center as an "employer" under the FMLA, thus depriving this Court of subject matter jurisdiction.

Plaintiff assumes this is an accurate statement of the number of persons employed by Crime Victim Center, but this should not be dispositive. Crime Victim Center is believed to be a non-profit corporation established, owned and partially or fully funded by the County of Erie (as well as through state and federal appropriations). The County of Erie has far more than fifty employees, and it may have established other, separate non-profit corporations with a sufficient number of employees to exceed the fifty-employee threshold to jurisdiction of this Court.

---

[3] This Court may take guidance from its decision in <u>Fenell v. Plastek, et al.</u> (No. 2003 - 387 Erie), to deny those defendants' Rule 12 motion for dismissal of that plaintiff's claim under ECHRO, it being too early a stage in the action.

5

States and their subdivisions are liable to EEOC and private enforcement action under the

ADEA, and it can therefore be inferred that they are bound by FMLA. See, State Police for

Automatic Retirement Ass'n v. Difava, 138 F.Supp.2d 142 (D.Mass. 2001)(affirmed 317 F.3d 6);

Grossman v. Suffolk County Dist. Atty.'s Office, 777 F.Supp. 1101 (E.D.N.Y. 1991). Again, it

is believed that Crime Victim Center derives about 99% of its funding from federal

appropriations. That being the case, shielding it from liability by virtue of its corporate structure

is inequitable and would result in an artificial safety zone from compliance with FMLA that

undermines the purposes and intended scope of that law.


**D.** **Requested dismissal of promissory estoppel claim relating to FMLA (Count VI).**

Plaintiff acknowledges the strict gate-keeping function of subject matter jurisdiction with

regard to access to the federal courts, and that subject matter jurisdiction, and its alleged lack,

underlies Defendants' motion to dismiss Plaintiff's FMLA claim. As discussed in Section C,

above, that motion should be denied, but there are no similar prohibitions with regard to

Plaintiff's estoppel claim related to FMLA.

Defendant Crime Victim Center, with its policies and forms, unequivocally

communicated to Plaintiff that he had, or apparently had, all the protections of the FMLA. He

relied on that communication, or statement, in availing himself of a brief leave as allowed by

FMLA, secure in the assumption that he would not be subject to penalty or retaliation for doing

so. As it turned out, he was wrong. He was misled by his employer into believing he was

protected by FMLA, he relied on that belief, to his detriment as it turned out, as it appears that

his decision to take leave contributed to his employer's decision to fire him.Defendants'

contention that he has not pleaded facts to support the above hornbook definition of promissory estoppel is simply inaccurate. See, Complaint, paragraphs 63 and 64.

The only real issue is whether promissory estoppel is a valid cause of action in Pennsylvania. It is, as acknowledged by Defendants. Defendants' brief, pp. 13-14 (and by implication, footnote 1, p. 13). This Court should reject the reasoning of courts of other federal circuits to the effect that a promissory estoppel claim will be allowed in relation to a FMLA claim only where the employee is already covered by the FMLA. See, Defendants' brief, p. 14. This reasoning is illogical and non-sensical, as there is no need to create rights by estoppel where one is already possessed of those rights. It is enough to accept the predicate bases of those decisions, which is that FMLA rights can be created by promissory estoppel.


E.    **Requested dismissal of Plaintiff's claims against Susanne Porowski under the ADEA, ADA and ECHRO (Counts I, II and IV).**

Plaintiff acknowledges the authority Defendants cite to the effect that individuals cannot be held liable in their individual capacities under the ADEA or ADA. However, other courts have allowed individual liability under the ADEA. See, House v. Cannon Mills Co., 713 F.Supp. 159, 160-62 (M.D.N.C. 1988). Further, as Defendants acknowledge, the Third Circuit has not ruled on the issue. See, Defendants' brief, p. 17. As employers may be vicariously liable by respondeat superior as well as directly liable, Plaintiff has alleged his well-founded belief of the personal culpability on behalf of Defendant Porowski, that should inure not only to Crime Victim Center via respondeat superior, but also to herself.. See, Wray v. Edward Blank Associates, Inc., 924 F.Supp. 498 (S.D.N.Y. 1998)(providing for respondeat superior liability under the ADEA).

During the administrative phase of this dispute, Defendant Crime Victim Center asked to be excused from blame on basis that its Board of Directors did not know of Plaintiff's membership in protected classes, something Defendant Porowski knew of. At the same time, Defendant Porowski, while presumably admitting to knowledge of Plaintiff's membership in various protected classes, has attributed solely to the Board of Directors the decision to fire Plaintiff. This strategy of the left and right hands disavowing knowledge of the other's knowledge, and responsibility for the others' actions, if credited, will undermine the purposes of these statutes. Therefore, Defendant Porowski should not be dismissed from this action, especially at this early stage.

As for the ECHRO, Plaintiff incorporates his argument under Section B of this brief, above, for the principal that there *is* a private cause of action under the local ordinance, at least against the corporate "employer."[4] Defendants ask this Court to analogize ECHRO to the ADEA and ADA to find that there is no cause of action against Defendant Porowski individually. Defendants' Brief, p. 18. As discussed above, this question is not settled in the Third Circuit, and because of the shifting of responsibility / disavowal of knowledge defense anticipated of Defendants, this Court should not dismiss Ms. Porowski at this time.

Moreover, ECHRO could just as easily (and more logically) be analogized to the Pennsylvania Human Relations Act, under which individuals have been held subject to liability. See, Santarelli v. Nat. Book Co., Inc., 41 Pa.D.&C.4th 483, 490-492 (Lack. 1999), 1999 WL 12112992. There, the court cited the divergence in authorities on whether there was liability

---

[4] ECHRO expressly includes charitable organizations such as Crime Victim Center which are "supported, in whole or in part, by governmental appropriations." ECHRO, Art. IV, Section M.

under the ADEA, and noted that the PHRA "makes it unlawful for any *person*, employer, .... to aid, abet, incite, compel or coerce in certain discriminatory practices." Id. at 491 (emphasis added). Plaintiff's complaint's allegations focus largely on the conduct of Porowski, sufficiently to establish aider and abetter liability on her behalf.

Respectfully submitted,

McCLURE & MILLER LLP

By: _____
Jeffrey J. Cole
Pa. Supreme Ct. No. 73052
717 State Street, Suite 701
Erie, PA 16501
(814) 453 - 3681

October 31, 2005

*Counsel for Plaintiff, Raymond P. Bielata*

### Certificate of Service

I certify that I served a true copy of the foregoing brief on defendants, via first class U.S. mail, care of their counsel of record, Lisa Smith Presta, Esq., on October 31, 2005.

_____
Jeffrey J. Cole

9

# THE HUMAN RELATIONS COMMISSION OF THE COUNTY OF ERIE

# BY THE COUNTY OF ERIE HUMAN RELATIONS COMMISSION



OFFICIAL SEAL OF ERIE COUNTY

PENNSYLVANIA

**FEBRUARY 2002**

CITY OF ERIE
Mayor Richard Filippi

COUNTY EXECUTIVE
Rick Schenker

\* \* \*

COUNTY OF ERIE HUMAN RELATIONS COMMISSION
William F. McCarthy, Chairman

Erie County Human Relations Commission
140 West 6th Street
Erie, PA 16501
(814) 451-7021

Amended and Approved by Erie County Council February 26, 2002

**IMPORTANT NOTICE**

The County of Erie Human Relations Commission publishes this
compilation of the laws it administers for informational purposes only.
The Commission is not responsible for any errors or omissions herein,
and this compilation is not to be cited, for any purpose whatever.

**County Council Members**

David E. Mitchell, Chair
Joy Greco, Vice Chair
James B. Terrill
Carol J. Loll
Mark A. DiVecchio
Joseph F. Giles
Fiore Leone

Flo Fabrizio, Chief Clerk

**City Council Members**

Mario Bagnoni
Joseph Borgia
James T. Casey
Rubye Jenkins-Husband
Ian Murray
James N. Thompson
Melvin Witherspoon

James Klemm, City Clerk

Rev. Willie Damper, Chief Compliance Officer
Erie County Human Relations Commission
Erie County Courthouse
140 West Sixth Street - Room 112
Erie, PA 16501
814-451-7021 • Fax: 814-451-6484

evils, thereby threatening the peace, health, safety, and general welfare of the County and its inhabitants.

B)    It is declared to be the public policy of the County of Erie to foster the employment of all individuals in accordance with their fullest capacities, regardless of their race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person, or because the person is a handler or trainer of support or guide animals and to safeguard their right to obtain and hold employment without such discrimination, assure equal opportunities to all individuals, safeguard their rights at places of public accommodation and secure commercial housing regardless of race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person, or because the person is a handler or trainer of support or guide animals is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this Ordinance.

C)    This article shall be deemed an exercise of the police powers of the County for the protection of the public welfare, prosperity, health, and peace of the people of Erie County. **Nothing in this ordinance shall be interpreted by any commission, court, or other body as elevating any one group into a protected class, or bestowing any greater right than those afforded individuals or groups under the Constitution of the United States of America, the Constitution of the Commonwealth of Pennsylvania, duly enacted federal laws, and duly enacted laws of the Commonwealth.**

Article III.    FREEDOM FROM DISCRIMINATION

The opportunity for an individual to obtain employment for which he/she is qualified, and to obtain all the accommodations, advantages, facilities, and privileges of any public accommodation and of any housing accommodation and commercial property without discrimination because of race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person, or because the person is a handler or trainer of support or guide animals is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this Ordinance.

2

## Article IV.    DEFINITIONS

As used in this Ordinance, unless a different meaning clearly appears from the context, certain terms are defined as follows. Words importing the masculine extend and shall be applied to the feminine and neuter genders.

A)    The term "**accessible**" means being in compliance with the applicable standards set forth in the following:

(1).    the Fair Housing Act (Public Law 90-284, 42 U.S.C. § 3601 et seq.);

(2)    the Americans with Disabilities Act of 1990 (Public Law 101-336, 42 U.S.C. § 12101 et seq.);

(3)    the Act of September 1, 1965 (P.L. 459, No. 235, 71 P.S. § 1455.1 et seq.), entitled, as amended, "An act requiring that certain buildings and facilities adhere to certain principles, standards and specifications to make the same accessible to and usable by persons with physical disabilities and providing for enforcement;" and

(4)    the other applicable federal, state or local laws or regulations covering accessibility or accommodations.

B)    The term "**Advisory Board**" shall refer to the appointed, eleven-member <u>non-voting</u> Board which <u>may perform</u> research, education, and public relations <u>duties under the direction</u> of the Erie County Human Relations Commission.

C)    The term "**age**" includes any person forty (40) years of age or older.

D)    The term "**aggrieved person**" means any person who claims to have been injured by a discriminatory practice.

E)    The term "**commercial property**" means:

(1)    Any building, structure, or facility, or portion thereof, which is used, occupied or is intended, arranged or designed to be used or occupied for the

purpose of operating a business, an office, a manufactory or any public accommodation; and

(2)    Any vacant land offered for sale, lease or held for the purpose of constructing or locating thereon any such building, structure, facility, business concern or public accommodation.

F)    The "**Commission**" means the Erie County Human Relations Commission (ECHRC). The terms "Commission" and "Enforcement Commission" may <u>be</u> and are used interchangeably herein.

G)    "**Complaint**" shall refer to the initial signed statement alleging discrimination as filed with the Commission by the complainant.

H)    The terms "**conciliation**" or "**conciliation conferences**" shall refer to a process of dispute resolution that is mutual and voluntary in an attempt to reach an informed settlement between the parties (see also mediation).

I)    The term "**disability**" or "**handicap**," with respect to a person, means:

(1)    a physical or mental impairment which substantially limits one or more of such person's major life activities;

(2)    a record of having such an impairment; or

(3)    being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance, as defined in section 102 of the Controlled Substances Act (Public Law 91-513, 21 U.S.C.§802).

(4)    As used in this paragraph, the phrase:

(a)    "physical or mental impairment" includes:

1.    any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems; neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin and endocrine or.

2.    any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness,

3

and specific learning disabilities. The term "physical or mental impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus infection, mental retardation, emotional illness, drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism.

(b) **"major life activities"** means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working;

(c) **"has a record of such an impairment"** means has a history of, or has been misclassified as having, a mental or physical impairment that does not substantially limit major life activities, but that is treated by an employer or owner, operator or provider of a public accommodation as constituting such a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment, or has none of the impairments defined in subparagraph (4)(A) of this paragraph but is treated by an employer or owner, operator, or provider of a public accommodation as having such an impairment.

J) The term **"discriminate"** or **"discrimination"** means any difference in treatment in hiring, referring for hire, promoting, training, membership in employee or labor organizations, the sale, lease, rental or financing of housing, rendering service in places of public accommodation, because of race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, or because the use of guide or support animals because of the disability of the person, or because the person is a handler or trainer of support or guide animals. The term "discrimination" includes segregation, and also includes any act that is unlawful under this Ordinance.

K) The term **"Complainant"** means the person (including the Commission) who files a complaint under this Ordinance.

L) The term **"employee"** does not include (1) any individual employed in agriculture or in the domestic service of any person; (2) any individuals who, as a part of their employment, reside in the personal residence of the employer; (3) any individual employed by said individual's parents, spouse or child.

5

M) The term **"employer"** includes Erie County or any political subdivision or board, department, commission, or school district thereof and any person employing four or more persons within the County, but except as hereinafter provided, does not include religious, fraternal, charitable, or sectarian institutions or organizations, except such institutions or organizations supported, in whole or in part, by governmental appropriations. The term "employer" with respect to discriminatory practices based on race, color, age, sex, national origin, or non-job related disability, includes religious, fraternal, charitable and sectarian institutions or organizations employing four or more persons within the County.

N) The term **"employment agency"** includes any person regularly undertaking, with or without compensation, to procure opportunities to work or to procure, recruit, refer or place employees.

O) The term **"Fair Housing Act"** means Public Law 90-284, 42 U.S.C. § 3601 et seq.

P) The term **"familial status"** means one or more individuals who have not attained the age of eighteen years being domiciled with:

(1) a parent or other person having legal custody, of such individual or individuals; or

(2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

NOTE: The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

Q) The term **"housing accommodation"** includes: (1) any building, structure, mobile home site or facility, or portion thereof, which is used, occupied or is intended, arranged or designed to be used or occupied as the home residence or sleeping place of one or more individuals, groups, or families whether or not living independently of each other and (2) any vacant land offered for sale, lease or held for the purpose of constructing or locating thereon any such building, structure, mobile home site or facility. The term "housing accommodation" shall not include any personal residence, limited to the exceptions in §804(except (c)) of the Fair Housing Amendments Act of 1988.

6

R)    The term "housing for older persons" means housing:

(1)    provided under any state or federal program that the HUD Secretary determines is specifically designed and operated to assist elderly persons (as defined in the state or federal program and subordinate to the Secretary of Housing and Urban Development or

(2)    intended for, and solely occupied by, persons 62 years of age or older; or

(3)    intended and operated for occupancy by persons 55 years of age or older, and:

(a)    at least 80 percent of the occupied units are occupied by at least one person who is 55 years of age or older;

(b)    the housing facility or community publishes and adheres to policies and procedures that demonstrate the intent required under this subparagraph; and

(c)    the housing facility or community complies with rules issued by the Commission for verification of occupancy, which shall:

(i)    provide for verification by reliable surveys and affidavits; and

(ii)    include examples of the types of policies and procedures relevant to a determination of compliance with the requirement of clause (I). Such surveys and affidavits shall be admissible in administrative and judicial proceedings for the purposes of such verification.

U)    The term "lending institution" means any bank, insurance company, savings and loan association or any other person or organization regularly engaged in the business of lending money, guaranteeing loans, purchasing loans or providing other financial assistance which is either secured by residential real estate or is, for the purpose of purchasing, constructing, improving, repairing or maintaining a dwelling, or engaged in the selling, brokering, or appraising of residential real property.

V)    The term "mediation" shall refer to a process of dispute resolution that is mutual and voluntary in an attempt to reach informed settlements between parties. "Mediation" is facilitated by an outside, neutral third party.

W)    The term "non-job-related disability" means any disability that does not substantially interfere with the ability to perform the essential functions of the employment for which a disabled person applies, is engaged in, or has been engaged in. Uninsurability or increased cost of insurance under a group or employee insurance plan does not render a disability job-related.

X)    The term "owner" includes lessee, sub lessee, assignee, manager, agent or any other person having the right of ownership or possession or the authority to sell, rent, or lease any housing accommodation, including the County and its departments, boards, and commissions.

Y)    The term "person" includes one or more individuals, partnerships, associations, organizations, corporations, legal representatives, trustees in bankruptcy, or receivers. It also includes, but is not limited to, any owner, lessor, assignor, builder, manager, broker, salesman, agent, employee, independent contractor, lending institution, the Commonwealth of Pennsylvania, and all political subdivisions, authorities, boards, and commissions thereof, including the County of Erie.

Z)    The term "personal residence" means any single-family house sold or rented by an owner, provided:

(1)    that such private individual owner does not own more than three such single-family houses at any one time;

(2)    that in the case of the sale of any such single-family house by a private individual owner not residing in such house at the time of such sale or who was not the most recent resident of such house prior to such sale, the exemption granted by this subsection shall apply only with respect to one such sale within any twenty-four month period;

S)    The term "independent contractor" includes any person who is subject to the provisions governing any of the professions and occupations regulated by state licensing laws enforced by the Bureau of Professional and Occupational Affairs in the Department of State.

T)    The term "labor organization" includes any organization which exists for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment or of other mutual aid or protection in relation to employment.

NOTE: The authority to determine whether any federal program "is specifically designed or operated to assist elderly persons" is vested in the HUD Secretary. See 24 CFR §§ 100.302 and 115.203(d).

7

8

(3)  that such bona fide private individual owner does not own any interest in, nor is there reserved on his behalf, under any express or voluntary agreement, title to, or any right to all or a portion of the proceeds from the sale or rental of more than three such single-family houses at any one time;

(4)  that after December 31, 1969, the sale or rental of any such single-family house shall be excepted from the application of this Ordinance only if such house is sold or rented:

(a)  without the use in any manner of the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such facilities or services of any person in the business of selling or renting dwellings, or of any employee or agent of any such broker, agent, salesman, or person; and

(b)  without the publication, posting, or mailing, after notice, of any advertisement or written notice in violation of the Ordinance but nothing in this proviso shall prohibit the use of attorneys, escrow agents, abstractors, title companies, and other such professional assistance as necessary to perfect or transfer the title.

"Personal Residence" as defined is limited to the exceptions set forth herein in Article IX.

The term **"personal residence"** is limited to rooms or units containing living quarters occupied or intended to be occupied by no more than two (2) families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence.

The term **"public accommodation, resort or amusement"** means provision of service; or any place which is open to, accepts, or solicits the patronage of the general public; or offers goods or services to the general public; the Commonwealth of Pennsylvania, and all political subdivisions, authorities, boards and commissions thereof, including the County of Erie. The term "public accommodation" shall not include any accommodations that are in their nature distinctly private, personal and confidential.

**(BB)** The term **"real estate-related transaction"** means any of the following:

(1)  the making or purchasing of loans or providing other financial assistance—

(a)  for purchasing, constructing, improving, repairing or maintaining a housing accommodation or commercial property or

(b)  secured by real estate; or

(2)  The selling, brokering, or appraising of real property.

**(CC)** **"Real estate broker"** means any natural person, partnership, association, or corporation who, for a fee or other valuable consideration or other purposes, sells, purchases, exchanges, rents, negotiates, or offers or attempts to negotiate, the sale, purchase, exchange or rental of the real property of another, or holds himself out as engaged in the business of selling, purchasing, exchanging or renting the real property of another, or collects rental for the use of the real property of another or attempts to secure the listing for sale or rental of a housing unit by representing that a change has occurred or will or may occur with respect to the age, racial, religious creed, ethnic, disability, the use of a guide or support animal, sex, sexual orientation, or familial status, composition of the street, block, neighborhood, or area in which such housing accommodation is located.

**(DD)** **"Real estate sales person or agent"** means any person employed by a real estate broker to perform, or to assist in the performance of any or all of the functions of a real estate broker, or providing any services in connection therewith.

**(EE)** **"Sexual orientation"** means male or female heterosexuality, homosexuality, bisexuality, or any other gender identity, excluding any activity of a sexual nature prohibited by Title 18 of the Pennsylvania Consolidated Statutes or any other law of the Commonwealth of Pennsylvania.

Article V.    ERIE HUMAN RELATIONS COMMISSION: POWERS AND DUTIES

(A)  There is hereby established the Erie County Human Relations Commission. The Commission shall be composed of two bodies: the Enforcement Commission and an Advisory Board (the research and educational arm of the commission). Members of both bodies shall be County residents, selected from a broadly and diverse representative cross-section of the racial, ethnic and economic groups, sympathetic with the principles and purposes of this Ordinance and shall serve without compensation.

The nine (9) enforcement Commissioners shall consist of seven (7) members appointed by the Erie County Council and two appointed by the Erie City Council.

(2) The Advisory Board shall consist of eleven (11) members, seven (7) appointed by Erie County Council and four (4) appointed by Erie City Council.

(B) Members of the Human Relations Commission and Advisory Board shall be appointed as follows:

(1) Each member of Erie County Council shall recommend to the County executive one person to be appointed an Enforcement Commissioner and one person to be appointed to the Board of Advisors by the County Executive subject to ratification by Erie County Council.

(2) Two (2) Members of Enforcement Commissioners and four (4) members of the Advisory Board shall be appointed by the City of Erie with due regard to the appointment rules and procedures set up by Erie City Council.

(3) Terms of Enforcement Commissioners and the Advisory Board shall be four years. However, any vacancy shall be filled for the unexpired terms in the same manner as original appointments. Members may be re-appointed. A Commissioner or Advisor whose term has expired shall continue to serve until replaced by a duly appointed, approved, and confirmed Commissioner.

(C) Any five (5) Enforcement Commissioners and any six (6) Advisors shall constitute a quorum (one more than a majority of those appointed) and a majority vote of those present at any meeting **of the respective bodies** shall be sufficient for any official action taken. **At any joint meeting of Commissioners and Advisors, only Commissioners shall have the power to vote on any action.**

(D) Upon adoption of this ordinance by County Council, the Commission is hereby vested with the authority to administer and enforce this Ordinance and in connection therewith it shall have the following powers and duties:

(1) To establish and maintain a central office in the County Court House.

(2) To meet and function regularly at the Court House.

(3) Within existing County budgetary procedures to recommend **for approval of the County Council the appointment of** attorneys to render legal advice

11

from time to time to enforcement Commissioners on matters appearing before them.

**(4) To recommend to the County Executive, for approval by the County Council, the appointment of employees and agents as the Commission may deem necessary. The duties and compensation for such employees shall follow established County personnel policies.**

(5) To adopt, promulgate, amend, or rescind rules and regulations to effectuate the policies and provisions of this Ordinance and to **forward such** recommendations to Erie County Council.

(6) To the Board of Advisors, the Enforcement Commissioners assign the responsibility for public relations, research and education. The Board of Advisors may examine patterns and practices of discrimination in our community. The Board **may** foster, through research, community education, and outreach, good will among the groups and elements of the population of the County.

(7) Subject to approval by the Enforcement Commissioners, The Board of Advisors shall issue such reports and such results of investigations and research as, in its judgment, will tend to promote good will and minimize or eliminate discrimination.

(8) To prepare and distribute fair practices notice;

(9) From time to time, but not less than once a year, a report to Council, describing in detail the investigations, proceedings, hearings and studies it has conducted and their outcome, the decisions it has rendered and the other work performed by it and make recommendations for such further legislation concerning abuses and discrimination because of race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person, or because the person is a handler or trainer of support or guide animals, as may be desirable;

(10) To elect one of its members as chairperson and such other officers as it may deem necessary;

(11) To request other departments, boards and commissions of Erie County government to assist in the performance of its duties and such other departments, boards and commissions shall cooperate fully with the Commission in regard to claims of discrimination;

12

(12) To inspect, upon request, such records of the Commonwealth or any of political subdivision, board, department, commission or school district thereof as it may deem necessary or advisable to carry into effect the provisions of this Ordinance.

(13) To investigate where no complaint has been filed, but with the consent of at least five (5) of the members of the enforcement Commission any problem of discrimination with the intention of avoiding or preventing discrimination and promoting equal opportunity for all.

(14) (a) To hold hearings, subpoena witnesses, compel attendance, administer oaths, take testimony of any person under oath or affirmation and, in connection therewith, to require the production of any books and papers relating to any matter under investigation where a complaint has been properly filed before the Commission. The Commission may make rules as to the issuance of subpoenas by individual Commissioners. In case of contumacy or refusal to obey a subpoena issued to any person, any court of jurisdiction, upon application by the Commission, may issue to such person an order requiring such person to appear before the Commission, to produce documentary evidence, if so ordered, or to give evidence touching the matter in question, and any failure to obey such order of the court may be punished by such court as a contempt thereof.

(b) No person shall be excused from attending and testifying or from producing records, correspondence, documents or other evidence in obedience to the subpoena of the Commission or of any individual Commissioner, on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled after having claimed his privilege against self-incrimination, to testify or produce evidence, except that such person so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying. The immunity herein provided shall extend only to natural persons so compelled to testify.

(E) BYLAWS: The Erie County Human Relations Commission shall prepare and submit Bylaws to Erie County Council for their approval. Bylaws may be amended by a majority vote of the regular members of the Commission. The Commission may seek the advice of the Advisory board at any duly called joint meeting. Proposals for amending the Bylaws should be set forth in writing to all members of the Commission and Advisory Board at least twenty (20) days before the meeting at which the amendment is to be voted on. Amendments must be ratified by Erie City and County Councils. The members of the |

Commission and Advisory Board shall annually elect from their own number a chairman, a vice-chairman and secretary. These officers shall serve until the first Monday of January of each year.

(F) MEETINGS: All meetings of the Erie County Human Relations Commission and its Board of Advisors will be held in accordance with the Pennsylvania Sunshine Act and in handicapped accessible facilities.

Article VI.   PROCEDURE

(A) Any person claiming to be aggrieved by an alleged unlawful discriminatory practice, may make, sign, and file with the Commission a verified complaint in writing which shall state the name and address of the person alleged to have committed the unlawful discriminatory practice and the particulars thereof. The complaint shall also contain such other information as may be required by the Commission. The Commission, upon its own initiative, may in like manner sign and file a complaint. The complainant shall have the power to fairly and reasonably amend any complaint, and the respondent shall have the like power to amend an answer. The Commission's right to amend a complaint is hereby limited to those complaints initiated and filed by the Commission.

(B) After the filing of any complaint the Commission shall make a prompt investigation. In the conduct of such investigation the Commission may issue subpoenas to any person to furnish information, records, and other documents. The Commission must commence proceedings within thirty (30) days of receipt of the complaint. The Commission shall complete its investigation of a complaint within 100 days of receipt of the complaint, unless otherwise impracticable and, then, upon written notification and explanation of such impracticability to all parties. Administrative disposition of a complaint shall be within one (1) year of its filing and, if otherwise impracticable, upon written notification to all parties of the reasons for such impracticability.

(C) At the time of filing a complaint, the Commission shall advise the complainant of the time limits and choice of forums and advise the respondent of procedural rights.

(D) Upon the filing of a complaint, the Commission shall send a copy of the complaint to the complainant and to the named respondent within ten (10) days from the date of docketing the complaint, unless otherwise required by the Fair Housing Act.

(E) A respondent shall file a written, verified answer to the complaint within thirty (30) days of service of the complaint, unless otherwise required by the Fair Housing Act. The

Commission, upon request of the respondent, may grant an extension of not more than thirty additional days, unless otherwise required by the Fair Housing Act.

(F) If after thirty (30) days (in no case more than sixty (60) days with an extension granted by the Commission) a respondent fails to answer the complaint, the allegations contained within said complaint will be deemed admitted by respondent and the Commission will proceed as if respondent had filed an answer admitting the allegations contained within the complaint.

(G) After service of the complaint, the Commission shall encourage voluntary and informed predetermination settlements between parties. Any settlements reached by the parties may be monitored by the Commission.

(H) If it is determined after such investigation that there is no basis for the allegations of the complaint, the Commission shall, within ten (10) days from such determination, cause to be issued and served upon the complainant and respondent written notice of such determination. The notices shall also state that the complaint will be dismissed unless within ten (10) days after such service the complainant or his attorney file, with the Commission, a request for a review hearing. The Commission shall, upon request for such a hearing, provide the complainant and his attorney, if any, an opportunity to appear before the Commission, a member thereof or a staff representative of the Commission, at the election of the Commission to present such additional information as may be available to support the allegations of the complaint. If, after such a hearing, the Commission or its representative determines there is no basis for the allegation, the complaint shall be dismissed and there shall be no appeal from such a decision.

(I) If the Commission, after investigation, determines that probable cause exists, the Commission shall promptly issue a charge and immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation, and persuasion. Any conciliation agreement arising out of conciliation efforts by the Commission shall be an agreement between the respondent and the complainant and shall be subject to the approval of the Commission. Each conciliation agreement shall be made public unless the complainant, respondent, and Commission all agree that disclosure is not required to further the purposes of this Ordinance.

(J) If the Commission, in its discretion, finds it is not possible to eliminate such unlawful practices by persuasion, the Commission shall cause to be issued and served a written notice, together with a copy of such complaint as originally filed or as the same may have been amended by the Commission, requiring the respondent to answer the charges of such complaint at a hearing before the Commission at a time and place to be specified in such

notice. The Commission may designate one or more of its members to preside at such meeting, or it may at its election conduct such hearing en banc.

(1) Whenever notice of a hearing has been given under this subsection, either party may elect to have the claim asserted in the complaint decided in a civil action brought under the original jurisdiction of the Court of Common Pleas of Erie County. The written notice of the Commission shall inform the parties of this right. An election must be made within twenty (20) days after receipt of the notice of hearing. If an election for civil action is made by either party, the Commission shall, within thirty (30) days from the date of election, commence and maintain a civil action on behalf of the complainant.

(K) The case in support of the complaint shall be presented to the Commission by its attorney or by a member of its staff. The respondent may file a written verified answer to the complaint and appear at such hearing in person or with counsel. The Commission shall not be bound by the strict rules of evidence prevailing in courts of law or equity. The testimony taken at the hearing shall be under oath and shall be recorded by a stenographer and shall be transcribed if necessary.

(L) If, upon all the evidence at the hearing, the Commission finds that the respondent has been engaged in or is engaged in any unlawful discriminatory practice, the Commission shall state its findings of fact and shall issue and cause to be served on the respondent an order requiring the respondent to cease and desist from such unlawful discriminatory practice or practices and to take such affirmative action, including, but not limited to, hiring, reinstatement, or upgrading of employees, with or without back pay, restoration to membership in any respondent labor organization, or the extension of full, equal, and unsegregated accommodations, advantages, facilities and privileges to all persons, and/or such other equitable and civil remedies including but not limited to compensatory damages, attorneys' fees, verifiable reasonable out-of-pocket expenses, costs, and the assessment of a civil penalty as available under the Pennsylvania Human Relations Act, Act of Oct. 27, 1955, (P.L. 744, No. 222), as amended, as, in the judgment of the Commission, will effectuate the purpose of this Ordinance, and including a requirement for report of the manner of compliance.

(M) If, upon all the evidence, the Commission finds that the respondent has not engaged in any unlawful discriminatory practice, the Commission shall state its findings of fact and shall dismiss the complaint. Notice of such action shall be given to the complainant and respondent.

(N) Any complaint filed pursuant to this section must be so filed within 180 days after the alleged act of discrimination has occurred or terminated unless otherwise required by the

Fair Housing Act. Any complaint may be withdrawn at any time by the party filing the complaint.

(O)   In all situations which may require prompt judicial relief, including those situations when it appears that a housing unit or units involved in a complaint may be sold, rented, or otherwise disposed of before a determination of the case has been made, and the Commission shows probable cause for the complaint, the Court of Common Pleas of Erie County may issue an injunction restraining the complained of activity, including injunction of the sale, rental, or other disposition of the unit or units, except in compliance with the order of court. The court may attach to any such injunction granted such other conditions as it deems proper. Such injunction, if issued, shall be of no more than thirty (30) days' duration. If an extension of time is required, this extension may be granted at the discretion of the court but, a reasonable bond may be required by the court before granting such extension.

(P)   In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this Ordinance, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. The aggrieved person may seek civil enforcement of the law or ordinance by commencing an action in an appropriate court at least one year after the occurrence or termination of the alleged discriminatory housing practice. If the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay, compensatory, punitive damages, attorneys' fees, or any other legal or equitable relief as the court deems appropriate.

(Q)   **Duties of a Party, Representations to the Commission, and Sanctions**

**(1)   Every complaint or response shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party.**

**(2)   By presenting to the Commission, whether by signing, filing, submitting, or later advocating a complaint, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that**

**(a)   It is not being presented for improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation;**

**(b)   The claims, defenses, and other legal contentions therein are warranted by existing law; and**

**(c)   The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation.**

**(3)   If, after notice and a reasonable opportunity to respond, the Commission determines that subdivision 2) has been violated, the Commission may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 2) or are responsible for the violation.**

**(4)   A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. The sanction may consist of, or include, directives of a non-monetary nature, an order to pay a penalty toward the County's Law Library, or, if imposed on motion of the other party and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses as a direct result of the violation.**

**(5)   When the Commission imposes sanctions, the Commission shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.**

Article VII.   ENFORCEMENT AND JUDICIAL REVIEW

The complainant, the County or the Commission may secure enforcement of the order of the Commission or other appropriate relief. When the Commission has heard and decided any complaint before it, enforcement of its order shall be initiated by the filing of a petition in such court, together with a transcript of the record of the hearing before the Commission, and issuance and service of a copy of such petition as in proceedings in equity.

A copy of the Commission's testimony shall be available at all reasonable times to all parties for examination without cost, and for the purpose of enforcement or judicial review of the order.

A final order entered by the Commission is an appealable order. If relief is sought from

17

18

the Court, said Court may make an order or decree enforcing, modifying, or setting aside, in whole or in part, the order of the Commission. The jurisdiction of the Court shall not be limited by acts pertaining to equity jurisdiction of the Courts. Any failure to obey an order of the Court may be punished by such Court as a contempt thereof.

## Article VIII. UNLAWFUL DISCRIMINATORY PRACTICES IN EMPLOYMENT

(A)    It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States, the Commonwealth of Pennsylvania, or the County of Erie, for any employer because of the race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions, or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

(B)    For any employer, employment agency, or labor organization, prior to the employment, contracting with an independent contractor or admission to membership, to:

(1)    Make any inquiry, elicit any information, or make or keep a record of or use any form of application or application blank containing questions or entries concerning the race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person, for employment or membership. Prior to an offer of employment, an employer may not inquire as to whether an individual has a disability or as to the severity of such disability. An employer may inquire as to the individual's ability to perform the essential functions of the employment.

(2)    Print or publish, or cause to be printed or published, any notice or advertisement relating to employment or membership indicating any preference, limitation, specification, or discrimination based upon race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person.

(3)    Deny or limit, through a quota system or otherwise, employment or membership because of race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person.

(4)    Substantially confine or limit recruitment or hiring of individuals, with intent to circumvent the spirit and purpose of this act, to any employment agency, employment service, labor organization, training school, or any other employee-referring source.

(5)    Deny employment because of, or a perception of, a prior disability.

(6)    Nothing above shall prevent the Commission from requiring reports, information, or answers to questions regarding race, color, religious creed, ancestry, age, sex, disability, the use of a guide or support animal, national origin, sexual orientation, or in connection with their compliance procedure, or affirmative action, or educational programs.

Nothing in clause (b) of this section shall bar any institution or organization for disabled persons from limiting or giving preference in employment or membership to disabled persons.

(C)    For any labor organization, because of the race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, non-job related disability of the person, the use of guide or support animals because of the disability of the person, to deny full and equal membership rights to any individual or otherwise discriminate against such individuals with respect to hire, tenure, terms, conditions, or privileges of employment, or any other matter, directly or indirectly, related to employment.

(D)    For any person, employer, employment agency, or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified, or assisted, in any manner, in any investigation, proceeding, or hearing under this Ordinance.

(E)    For any person, employer, employment agency, labor organization, or employee, to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this Ordinance or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

(F)    For any employment agency to fail or refuse to classify properly, refer for employment, or otherwise to discriminate against any individual because of his race, color, familial status, religious creed, ancestry, age, sex, national origin, sexual orientation, national origin, non-job related disability or the use of a guide or support animal because of the disability of the person.

(G)    For any individual seeking employment to publish or cause to be published any advertisement which in any manner expresses a limitation or preference as to the race, color, religious creed, ancestry, age, sex, national origin, sexual orientation, non-job related disability, or the use of a guide or support animal because of the disability of any prospective employee.

(H)    For any employer to discriminate against an employee or a prospective employee because the employee only has a diploma based on passing a general educational development test as compared to a high school diploma. However, should vocational technical training or other special training be required with regard to a specific position, then such training or special training may be considered by the employer.

(I)    To exclude or otherwise deny equal jobs or benefits to a person because of the disability of an individual with whom the person is known to have a relationship or association.

(J)    It shall not be an unlawful employment practice for an employer to express a preference for a certain kind of applicant where the position to be filled requires special qualifications, skills, or experience as long as such preference is not on the basis of race, color, religious creed, ancestry, age, sex, national origin, sexual orientation, non-job related disability, or the use of a guide or support animal. Likewise, this section of the Ordinance shall not be construed to prohibit the refusal to hire or the dismissal of a person who is not able to function properly in the job applied for or engaged in.

(K)    Notwithstanding any provision of this Article, it shall not be an unlawful employment practice for a religious institution or organization to hire or employ on the basis of sex or sexual orientation in those certain instances where sex or sexual orientation is a bona fide occupational qualification because of the religious beliefs, practices, or observation of the institution or organization.

(L)    Nothing in this ordinance shall be construed as creating an obligation on the part of any employer to extend health care or other benefits to the unmarried domestic partner of any covered employee, regardless of gender or sexual orientation. It shall not be considered discriminatory on any basis for an employer to provide different levels of benefits to employees based upon marital status or the presence or absence of minor dependents.

21

Article IX.

UNLAWFUL DISCRIMINATORY PRACTICES IN HOUSING

(A)    It shall be an unlawful discriminatory practice for any person to:

(1)    Refuse to sell, lease, finance, or otherwise to deny, withhold, make unavailable, any housing accommodation, or commercial property (specifically including loans made for any purpose so long as such loans are secured by real estate) from any person; or establish, announce, or follow a policy to denying or limiting housing opportunities through a quota or otherwise, because of the race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, or disability of any person, prospective owner, occupant or user of such housing accommodation or commercial property, or to refuse to lease any housing accommodation or commercial property to any person due to use of a guide or support animal because of the disability of the person, or because the person is a handler or trainer of support or guide animals, or because of the disability of an individual with whom the person is known to have a relationship or association.

(1.1)    Evict or attempt to evict an occupant of any housing accommodation because of pregnancy or the birth of a child.

(1.2)    "Otherwise to deny" as stated above includes, but is not limited to:

(a)    Representing to any person because of race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, disability, or who are guide or support animal dependent, that a dwelling is not available for sale, rental, or inspection when such dwelling is in fact available.

(b)    Failing to negotiate for the sale or rental of a dwelling.

(2)    Refuse to lend money, whether or not secured by mortgage or otherwise for the acquisition, construction, rehabilitation, repair, or maintenance of any housing accommodation or commercial property, or otherwise withhold financing of any housing accommodation or commercial property (or specifically including loans made for any purpose so long as such loans are secured by real estate)

22

from any person because of the race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, disability of any person, the use of a guide or support animal because of the disability of the user, or because the user is a handler or trainer of support or guide animals, or because of the disability of an individual with whom the person is known to have a relationship or association. This prohibition includes money lent for any purpose, when the loan is secured by residential real estate.

(3) Discriminate against any person in the terms or conditions of selling or leasing any housing accommodation or commercial property, or in furnishing facilities, services, or privileges in connection with the ownership, occupancy, or use of any housing accommodation or commercial property because of the race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, disability of any person, the use of a guide or support animal because of the disability of the user, or because the user is a handler or trainer of support or guide animals, or because of the disability of an individual with whom the person is known to have a relationship or association.

(3.1) Refuse to permit, at the expense of a person with a disability, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises, except that in the case of a rental, the landlord may, where it is reasonable to do so, grant permission for a modification if the renter agrees to restore the interior of the premises to the condition that existed before the modification, with reasonable wear and tear excepted.

(3.2) Refuse to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a housing accommodation.

(4) Discriminate against any person in the terms or conditions of any loan of money, whether or not secured by mortgage or otherwise, for the purchase, acquisition, construction, rehabilitation, repair, or maintenance of any housing accommodation or commercial property (or specifically including loans made for any purpose so long as such loans are secured by real estate) because of the race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, or disability of any person, the use of a guide or support animal because of the disability of the user, or because the user is a handler or support

trainer of guide or support animals, or because of the disability of an individual with whom the person is known to have a relationship or association.

(5) Print, publish, make, or circulate any statement, publication, notice, or advertisement:

(a) relating to the sale, lease, or acquisition of any housing accommodation or commercial property or the loan of money, whether or not secured by mortgage, or otherwise for the acquisition, construction, rehabilitation, repair, or maintenance of any housing accommodation or commercial property (or specifically including loans made for any purpose so long as such loans are secured by real estate) which indicates any preference, limitation, specification, or discrimination based upon race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, or disability of any person, the use of a guide or support animal because of the disability of the user, or because the user is a handler or trainer of guide or support animals, or because of the disability of an individual with whom the person is known to have a relationship or association, or

(b) relating to the sale, lease, or acquisition of any housing accommodation or commercial property which indicates any preference, limitation, specification, or discrimination based upon use of a guide or support animal because of the disability of the user or because the user is a handler or trainer of support or guide animals.

(6) Make any inquiry, elicit any information, make or keep any record, or use any form of application for the purchase, rental, or lease of housing accommodations, or to make real estate appraisals, containing questions or entries concerning race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, or disability of any person, the use of a guide or support animal because of the disability of the user, or because the user is a handler or trainer of guide or support animals, or because of the disability of an individual with whom the person is known to have a relationship or association in connection with the sale or lease of any housing accommodation or commercial property, or loan of any money, whether or not secured by mortgage or otherwise, for the acquisition, construction, rehabilitation, repair, or maintenance of any housing accommodation or commercial property, or to make any inquiry, elicit any information, make or keep any record, or use any form of application containing questions or entries concerning the use of a guide or support animal because of the disability of the user, or because the user is a handler or trainer

of support or guide animals, in connection with the lease of any housing accommodation or commercial property.

(7) Discriminate in the making or purchasing of loans, or in the appraising or brokering of residential real estate. Discrimination in brokering includes, but is not limited to, denying access to or membership in any multiple listing service or facility relating to the sale or rental of dwellings based on race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, disability, or because of the disability of an individual with whom the person is known to have a relationship or association, or based upon use of a guide or support animal, or because the person is a handler or trainer of guide or support animals.

(8) Design, Construct, operate, offer for sale, lease, or rent or otherwise make available housing or commercial property that is not accessible in accordance with federal law. This provision includes design and construction requirements, after the date that is thirty (3) months after September 13, 1988, as required under §804(f)(3)(C) of the Fair Housing Amendments Act of 1988, and U.S.C. 42 § 3604(f)(3)(C).

(a) In connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that:

(i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

(ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

(iii) all premises within such dwellings contain the following features of adaptive design:

(I) an accessible route into and through the dwelling;

(II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

(III) reinforcements in bathroom walls to allow later

installation of grab bars; and

(IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

(9) Discriminate in real estate related transactions, as described by and subject to the following.

(a) It shall be unlawful for any person or other entity whose business includes engaging in real estate related transactions to discriminate against any person in making available such a transaction or in the terms or conditions of such a transaction because of race, color, religious creed, ancestry, familial status, national origin, sexual orientation, sex, age, disability, use of a guide or support animal because of the disability of the user, or because the user is a handler or trainer of guide or support animals.

(10) Discriminate by engaging in a certain real estate practice: Blockbusting.

(a) It shall be unlawful for any real estate broker or real estate sales person or agent, or any other person for business or economic or other purposes to induce, directly or indirectly, or to attempt to induce, directory or indirectly, the sale or rental or the listing for sale or rental, of a housing accommodation by representing that a change has occurred or will or may occur with respect to the racial, age, religious, ethnic, sex, sexual orientation disability, the use of a guide or support animal, familial status, or composition of the street, block, neighborhood, or area in which such housing accommodation is located.

(b) Inducing, soliciting, or attempting to induce or solicit for commercial profit any listing, sale, or transaction involving any housing accommodation or commercial property by representing that such housing accommodation or commercial property is within any neighborhood, community, or area adjacent to any other area in which reside, or do not reside, persons of a particular race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, disability, or who are guide or support animal dependent.

(c) Discourage, or attempt to discourage, for commercial profit, the purchase or lease of any housing accommodation or commercial property

by representing that such housing accommodation or commercial property is within any neighborhood, community or area adjacent to any other area in which there reside, or may in the future reside in increased or decreased numbers, persons of a particular race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, disability, or who are guide or support animal dependent.

(d) Misrepresenting, creating or distorting a circumstance, condition or incident for the purpose of fostering the impression or belief on the part of any owner, occupant, or prospective owner or occupant of any housing accommodation or commercial property, that such housing accommodation or commercial property is within any neighborhood, community or area adjacent to any other area which would be adversely impacted by the residence, or future increased or decreased residence, of persons of a particular race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, disability, or who are guide or support animal dependent within such neighborhood, community, or area.

(e) In any way misrepresenting or otherwise misadvertising within a neighborhood or community, whether or not in writing, that any housing accommodation or commercial property within such neighborhood or community is available for inspection, sale, lease, sublease, or other transfer, in any context where such misrepresentation or misadvertising would have the effect of fostering an impression or belief that there has been or will be an increase in real estate activity within such neighborhood or community due to the residence, or anticipated increased or decreased residence, of persons of a particular race, color, familial status, age, religious creed, ancestry, sex, national origin, sexual orientation, disability, or the use of a guide or support animal because of the disability of the user.

(f) Nothing in this Act prohibits a person engaged in the business of furnishing appraisals of real property to take into consideration factors other than race, color, religious creed, ancestry, familial status, national origin, sexual orientation, sex, age, disability, use of a guide or support animal, or because the user is a handler or trainer of guide or support animals.

27

(11) For any person with the intention of defeating the purposes of this Ordinance to sell, lease, or transfer or attempt to sell, lease, or transfer, or offer, advertise, or make available for sale, lease, or transfer any housing accommodation which is the subject of a written verified complaint filed with the Commission until final determination of the complaint.

(11.1) For any person, after a complaint regarding a housing accommodation has been filed and prior to final determination by the Commission, to fail to include a notice of the complaint in any subsequent lease or agreement of sale involving that housing accommodation.

(12) If the Commission finds that a Respondent has engaged or is about to engage in a discriminatory housing practice, the Commission shall promptly issue an order for such relief as may be appropriate, which may include actual damages suffered by the aggrieved person and injunctive or other equitable relief. Such order may, to vindicate the public interest, assess a civil penalty against the respondent:

(12.1) in an amount not exceeding $10,000 if the respondent has not been adjudged to have committed any prior discriminatory housing practice;

(12.2) in an amount not exceeding $25,000 if the respondent has been adjudged to have committed one other discriminatory housing practice during the 5-year period ending on the date of the filing of this charge; and

(12.3) in an amount not exceeding $50,000 if the respondent has been adjudged to have committed 2 or more discriminatory housing practices during the 7-year period ending on the date of the filing of this charge.

Except that if the acts constituting the discriminatory housing practice that is the object of the charge are committed by the same natural person who has been previously adjudged to have committed acts constituting a discriminatory housing practice, then the civil penalties set forth in subparagraphs 12.2 and 12.3 may be imposed without regard to the period of time within which any subsequent discriminatory housing practice occurred.

28

Nothing in this clause, regarding age or familial status, shall apply to housing determined by the HUD Secretary to be specifically designed or operated to assist elderly persons. (24 CFR §§100.302 and 115.203(d)).

(13) Nothing in this clause shall bar any religious or denominational institution or organization or any charitable or educational organization which is operated, supervised, or controlled by or in connection with a religious organization, or any bona fide private or fraternal organization from giving preference to persons of the same religion or denomination or to members of such private or fraternal organization or from making such selection as is calculated by such organization to promote the religious principles or the aims, purposes, or fraternal principles for which it is established, or maintained. This exemption requires that the dwelling be owned and operated for other than a commercial purpose.

(14) Nothing in this clause shall apply:

(a) With respect to discrimination based on sex, to the rental or leasing of housing accommodations in a single-sex dormitory.

(b) To the rental of rooms in a landlord-occupied rooming house with a common entrance. This exemption is limited to rooms or units containing living quarters occupied or intended to be occupied by no more than two families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his or her residence. NOTE: A "family" includes one person.

(15) Nothing above shall prevent the Commission from requiring reports, information, or answers to questions regarding race, color, familial status, religion, creed, ancestry, age, sex, national origin, sexual orientation, or disability, or the use of a guide or support animal because of the disability of the user or because the user is a handler or trainer of support or guide animals, in connection with their compliance procedure or affirmative action or educational programs.

(16) Additionally, everything in this section is subject to Subtitle B of Title 24 of the Code of Federal Regulations (CFR) Part 100 - Discriminatory Conduct Under the Fair Housing Act. Specifically, the exemptions at §100.10 are not subject to §804(except(c)) but are subject to §§805, 806, and 818 the Fair Housing Amendments Act of 1988.

29

Article X.    PROHIBITED INTERFERENCE, COERCION OR INTIMIDATION

(A) It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this part, in accordance with the Fair Housing Act § 818.

(B) Conduct made unlawful under this section includes, but is not limited to, the following:

1. Coercing a person, either orally, in writing, or by other means, to deny or limit the benefits provided that person in connection with the sale or rental of a dwelling, or in connection with a residential real estate related transaction, because of race, ancestry, age, color, religion, sex, disability, familial status, national origin, or sexual orientation.

2. Threatening, intimidating, or interfering with persons in their enjoyment of a dwelling because of race, ancestry, age, color, religion, sex, disability, familial status, national origin, sexual orientation, or of visitors or associates of such person.

3. Threatening an employee or agent with dismissal or an adverse employment action, or taking such adverse employment action, for any effort to assist a person seeking access to the sale or rental of a dwelling, or seeking access to any residential real estate related transaction, because of the race, ancestry, age, color, religion, sex, disability, familial status, national origin, sexual orientation, of that person or any person associated with that person.

4. Intimidating or threatening any person because that person is engaging in activities designed to make other persons aware of, or encouraging such other persons to exercise, rights granted or protected by this Ordinance or the Fair Housing Act.

5. Retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under this Ordinance or the Fair Housing Act.

30

## Article XI. UNLAWFUL DISCRIMINATORY PRACTICES IN PUBLIC ACCOMODATIONS

(A)   It shall be an unlawful discriminatory practice for any person being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any public accommodation, resort or amusement to:

(1)   Refuse, withhold from, or deny to any person because of his race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person, or because the person is a handler or trainer of support or guide animals, either directly or indirectly, any of the accommodations, advantages, facilities, or privileges of such public accommodation, resort or amusement.

(2)   Publish, circulate, issue, display, post, or mail, either directly or indirectly, any written or printed communication, notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from, or denied to any person on account of race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person, or because the person is a handler or trainer of support or guide animals, or that the patronage or custom thereof or any person, belonging to, or purporting to be of any particular age, race, color, religious creed, sex, ancestry, national origin, sexual orientation, or disability, or to any person due to the use of a guide or support animal because of the disability of the user or because the user is a handler or trainer of support or guide animals, is unwelcome, objectionable, or not acceptable, desired, or solicited.

(3)   Exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to a person because of the disability of an individual with whom the person is known to have a relationship or association.

(4)   Construct, operate, or otherwise make available such place of public accommodation, resort, or amusement which is not accessible.

(5)   Aid, abet, incite, compel, or coerce the doing of any act declared by this subsection to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this subsection, or any order

(B)   For any person subject to the Ordinance to fail to post and exhibit prominently in his place of business any fair practices notice prepared and distributed by the Pennsylvania Human Relations Commission or the Erie County Human Relations Commission.

(C)   Nothing in this Ordinance shall bar any religious or denominational institution or organization, or any religious or denominational organization operated for charitable or educational purposes, which is operated, supervised, or controlled by or in connection with a religious organization, from limiting admission to or giving preference to persons of the same religion or denomination with regard to the occupancy, leasing, sale, or purchase of real estate, or from making such selection as is calculated by such organization to promote the religious principles for which it is established or maintained.

(D)   It shall be an unlawful discriminatory practice for any person to interfere with the exercise of one's rights under this Ordinance, harass, threaten, intimidate, harm, damage, or otherwise penalize any person, group, or business because he or they exercised his or their rights under this Ordinance or because he or they have complied with the provisions of this Ordinance, or enjoyed the benefits of this Ordinance, or because he or they have made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder.

(E)   It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of an unlawful employment, housing, or public accommodation practice prohibited by this Ordinance, or to obstruct or prevent any person from complying with the provisions of this Ordinance, or any order issued hereunder.

## Article XII.   RELIGIOUS OBSERVANCE

(A)   It shall be an unlawful discriminatory practice for any employer to prohibit, prevent, or disqualify any person from, or otherwise to discriminate against, any person in obtaining or holding employment because of such person's observance of any particular day or days or any portion thereof as a Sabbath or other holy day in accordance with the requirements of the person's religion.

(B)   Except as may be required in an emergency or where personal presence is indispensable to the orderly transaction of public business, no employee shall be required to remain at the place of employment during any day or days or portion thereof that, as a religious requirement, the person observes as the Sabbath or other holy day, including a

issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this subsection to be an unlawful discriminatory practice.

reasonable time prior and subsequent thereto for travel between the place of employment and home. Provided however, that any such absence from work shall, wherever practicable in the judgment of the employer, be made up by an equivalent amount of time and work at some other mutually convenient time, or shall be charged against any leave with pay ordinarily granted, other than sick leave. Provided further, however, that any such absence not so made up or charged, may be treated by the employer of such person as leave taken without pay.

(C)   This section shall not be construed to apply to any position dealing with the public health or safety where the person holding such position must be available for duty whenever needed, or to any position or class of positions the nature and quality of the duties of which are such that the personal presence of the holder of such position is regularly essential on any particular day or days or portion thereof for the normal performance of such duties with respect to any applicant therefore or holder thereof who, as a religious requirement, observes such day or days or portion thereof as the Sabbath or other holy day.

Article XII.   CONFLICT AND SEVERABILITY

When a provision of this Ordinance is found to be in conflict with a provision of any other County Ordinance, or any regulation issued under the authority of such Ordinance said conflicting provision shall be presented to County Council which shall determine if the provision presents or does not present a conflict and may amend this Ordinance to correct said conflict.

This Ordinance shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. In the event that a portion of this Ordinance is found to be inoperable or against public policy, then this Ordinance shall be divisible and said inoperable portion shall not be construed so as to affect the validity of other provisions of this Ordinance and the other provisions shall remain in full effect.

Article XIV.   AUTHORIZATION TO RECEIVE DONATIONS

The authorization and appropriation of public funds to the Human Relations Commission shall not preclude the Commission from accepting grants or donations from any other sources, public or private, nor from entering into working agreements with other anti-discrimination agencies to further the work of this Commission and its purposes in administering this Ordinance and related state and federal statutes, so long as such activities provide no additional cost to the County without explicit prior approval of the County Council.

# ERIE COUNTY HUMAN RELATIONS COMMISSION

## COMMISSIONERS:

**William F. McCarthy, Chairman**

**Anthony Ferritto, Vice Chairman**

**Mary Hayes**

**Judith Jobes**

**Joseph Legnasky**

**Becky Mazary**

**Mary Ann McDanniels-Kulesa**

**Dorothy Smith**

**Wilfredo Velez**

**Rev. Willie Damper, Chief Compliance Officer**