IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


RAYMOND P. BIELATA,
            Plaintiff


v.                        CIVIL ACTION NO. 05-183 ERIE


CRIME VICTIM CENTER OF
ERIE COUNTY, INC. and
SUSANNE POROWSKI,
            Defendants



HEARING ON DEFENDANTS' MOTION TO DISMISS



Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Tuesday, November 22, 2005.



APPEARANCES:
        JEFFREY J. COLE, Esquire, appearing on behalf of
        the Plaintiff.

        LISA SMITH PRESTA, Esquire, appearing on behalf

of the Defendants.

Ronald J. Bench, RMR - Official Court Reporter

2

1            P R O C E E D I N G S

2

3            (Whereupon, the proceedings began at 8:55 a.m., on

4    Tuesday, November 22, 2005, in Courtroom C.)

5

6            THE COURT:  This is the time we set for argument on

7    the motion to dismiss and/or partially dismiss Counts I, II,

8    IV, V and VI of the complaint.

9            MS. PRESTA:  Good morning, your Honor.  I represent

10   the Crime Victim Center of Erie County and Susanne Porowski in

11   this matter which has been filed by Raymond Bielata.

12            THE COURT:  Can I ask you a question before we

13   start.

14          MS. PRESTA:  Sure.

15          THE COURT:  It's not clear from the pleadings, but

16   maybe there can be some agreement or stipulation on this.  Is

17   the Crime Victim Center of Erie County, Inc., a private

18   employer or a public agency?

19          MS. PRESTA:  It's my understanding, your Honor, that

20   it is a private employer.

21          THE COURT:  Let me tell you why I ask.  I mean there

22   was a lot of gunshots fired over this FLMA -- but I'm looking

23   at Section 825.109, 29 C.F.R., and it says "the determination

24   of whether an entity is a public agency, as distinguished from

25   a private employer, is determined by whether the agency has

3

1   taxing authority, or whether the chief administrative officer

2   or board, etc., is elected by the voters-at-large or their

3   appointment is subject to approval by an elected official."

4   If you know, how does that fit what this entity is?

5          MS. PRESTA:  To be honest, your Honor, I haven't had

6   the agency define itself to me in those terms.  But it would be

7   my understanding that it is a private employer, although, it

8  enjoys public funds, both state and federal.  Its chief

9  executive officer is not elected by the community at large, nor

10  does it have any taxing authority.

11       THE COURT:  Is it exclusively funded by the county,

12  do you know?

13       MS. PRESTA:  I do not know.  I do not believe so.

14       THE COURT:  We'll come back to that.  All right, in

15  any event, let's just take them in the order in which you threw

16  them up here.  There's a concession that there's no emotional

17  distress and pain and suffering damages?

18       MS. PRESTA:  That's correct.  And you're speaking of

19  Count I, the ADEA claim?

20       THE COURT:  Right.  And then with respect to the

21  punitive damage claim, there is some dispute back and forth,

22  you don't have to tell me anything on that, I've read the cases

23  on that.

24       MS. PRESTA:  Fair enough.

25       THE COURT:  Now, what about your position on this

4

1  FMLA?

2          MS. PRESTA:  Your Honor, it's our position that the

3    Crime Victim Center just does not meet the statutory

4    prerequisite for the definition of employer under the FLMA.

5    The court lacks the jurisdiction to oversee an FLMA claim

6    against it.

7          THE COURT:  Why aren't they an employer?

8          MS. PRESTA:  The Act specifically requires to

9    constitute an employer under the Act, you have to have 50 or

10   more employees.  The agency has currently 29, and at the time

11   of Mr. Bielata's termination --

12          THE COURT:  You're talking too fast for him.

13          MS. PRESTA:  Sorry, your Honor.

14          THE COURT:  Go ahead.

15          MS. PRESTA:  The agency has 29 employees currently.

16   At the time of Mr. Bielata's termination, it had 30 employees.

17   The Act is very clear that the FMLA will not apply to any

18   employer that does not employ at least 50 employees.

19          THE COURT:  Now, I'm looking at subsection (d) of

20   the regulations.  It says all public, this begs the question,

21   "but all public agencies are covered by the FMLA regardless of

22   the number of employees; they are not subject to the coverage

23   threshold of 50 employees carried on the payroll each day for

24  20 or more weeks in a year.  However, employees of public

25  agencies," I must admit this doesn't make any sense to me,

5

1  "however, employees of public agencies must meet all the

2  requirements of eligibility, including the requirement that the

3  employer, e.g., State, employ 50 employees at the worksite or

4  within 75 miles."  Do you know what that means?

5        MS. PRESTA:  I do not, your Honor.  That seems to me

6  to directly contradict the beginning of the subsection, and it

7  would be our position that the 50 employee requirement is still

8  in place.

9        THE COURT:  But if they're a public agency, and I'm

10  not saying they are or are not, but if they are, you only have

11  29 employees at the site, right?

12        MS. PRESTA:  That's correct.

13        THE COURT:  But there would presumably be 50 or more

14  employees of the county within 75 miles, right?

15        MS. PRESTA:  Of the entire Erie County, the Crime

16  Victim Center is a separate entity from Erie County.  I have to

17  assume that Erie County employs more than 50 persons, yes.

18        THE COURT:  All right.  So, in any event, your

19  position is pretty much pure and simple, there's 29.  But

20  doesn't that presume that they're a private employer?

21        MS. PRESTA:  It does presume that, your Honor.  And

22  if I can just have one second, I might be able to educate

23  myself on this point.

24        THE COURT:  Because Mr. Morton just came in?

25        MS. PRESTA:  He is the president of the board of

6

1  directors of the agency.

2        THE COURT:  We'll give you a second, you can talk

3  with Mr. Morton.

4        MS. PRESTA:  Thank you.

5        (Off the Record.)

6        THE COURT:  Mr. Morton, I didn't mean to press you

7  into service, but rather than do a relay, do you mind just

8  coming up here?

9        MR. MORTON:  No problem.

10        THE COURT:  What I'm trying to get a handle on and

11  I'm presently going to hear from plaintiff's counsel on this as

12  well, is what precisely is the nature of the entity of the

13  Crime Victim Center of Erie County and, specifically, I'm

14  interested in knowing whether it is a public agency within the

15  meaning of the FMLA.  And, pertinently, and then I'll let you

16  tell me whatever you want to tell me about what you understand

17  the structure to be, the regs say that the determination of

18  whether an entity is a public agency as distinguished from a

19  private employer is determined by whether the agency has taxing

20  authority or whether the chief administrative officer or board,

21  etc., is elected by the voters at large or their appointment is

22  subject to approval by an elected official.  What are you?

23      MR. MORTON:  Well, using that definition, your

24  Honor, we are a private employer.  We are a 501(c)(3) tax

25  exempt, not-for-profit corporation registered with the


7


1  Commonwealth of Pennsylvania.  We do not have the authority to

2  tax.  We are not appointed by any elected official.

3      THE COURT:  How is your board appointed, how does

4  that happen?

5      MR. MORTON:  Well, your Honor, according to the

6  bylaws of the Crime Victim Center, the board members, new board

7  members are brought on through a vote with the existing board

8  of directors.

9       THE COURT:  Tell me about your funding?

10      MR. MORTON:  The funding, your Honor, is from

11  numerous state agencies.  The Pennsylvania Coalition Against

12  Rape is one of our major funding sources.  We also get funds

13  from NHMR.  I'm really not prepared to go through the entire

14  list.

15      THE COURT:  But it's a multifaceted funding thing,

16  is that right?

17      MR. MORTON:  Correct, your Honor.

18      THE COURT:  All right.  Thank you very much, Mr.

19  Morton.

20      MR. MORTON:  Thank you, your Honor.

21      MS. PRESTA:  Your Honor, it's our position that, as

22  set forth in our brief, with respect to the FMLA claim, to

23  subject the Crime Victim Center to it would expand the Act and

24  would be contrary to the intent of the legislature that enacted

25  this employee prerequisite.

1          THE COURT:  Now, there's a claim in here for --

2    there's a claim brought as a private cause of action under the

3    Erie County Human Relations Ordinance?

4          MS. PRESTA:  That's Count IV, your Honor, yes.

5          THE COURT:  Your position is, I take it, by the

6    terms of the Ordinance, there is no such thing as a private

7    cause of action under that, is that right?

8          MS. PRESTA:  That is our position.

9          THE COURT:  Tell me why?

10          MS. PRESTA:  Your Honor, the ADEA and ADA --

11    expressly grant the ability to assert claims in court and have

12    the authority to do so.  The state legislature enacted the

13    PHRA.  The federal legislature enacted the ADEA and the ADA.

14    To my knowledge it's the Erie County officials who are elected,

15    who drafted the ECHRO.  That does not give rise to a private

16    cause of action in a court in Pennsylvania or in a federal

17    court.

18          THE COURT:  I'm inclined, I mean I've had this issue

19    before.  And I think the case may have resolved itself, so I

20    didn't have to conclusively address it, but I think it may have

21  been with Mr. Cole.

22      MS. PRESTA:  It was with both of us actually, your

23  Honor.  Your recollection is correct.

24      THE COURT:  And my initial skepticism as to the

25  viability of the claim under the local Ordinance remains, but

9

1  let me just bounce this language off of you and get your

2  reaction to it.  And this is from the Erie County Ordinance.

3  It says "in cases involving a claim of discrimination, if a

4  complainant invokes the procedures set forth in this Ordinance,

5  that individual's right of action in the courts of the

6  Commonwealth shall not be foreclosed."  Well, that doesn't tell

7  me anything, that just means you're not burning the bridge

8  behind you.  But then it goes on to say "the aggrieved person

9  may seek civil enforcement of the law or ordinance by

10  commencing an action in an appropriate court at least one year

11  after the occurrence or termination of the alleged

12  discriminatory housing practice."  Which makes, for reasons I

13  will be tell you in a minute, no sense to me.  And then it goes

14  on to say, "if the court finds that the respondent has engaged

15  in or is engaging in an unlawful discriminatory practice

16  charged in the complaint, the court shall enjoin the respondent

17  from engaging in such unlawful discriminatory practice and

18  order affirmative action which may include, but is not limited

19  to;" then it sets forth the various remedies, including back

20  pay, compensatory and punitive damages.  What does that mean?

21      MS. PRESTA:  Your Honor, I have the very section

22  which you've read to us and which Mr. Cole pointed out in his

23  brief highlighted.  I do not understand it.  Its reference with

24  regard to a private cause of action is specific to

25  discriminatory housing practice.  That does not apply in this


10


1  instance, which obviously is an employee matter.  It does end

2  with employment language.  So I cannot tell you what that

3  means, there is absolutely no case law in either state or

4  federal interpreting the Erie County Ordinance.

5      THE COURT:  Are you sure?

6      MS. PRESTA:  To our latest research, your Honor, I

7  wouldn't tell you there's not something that we missed, but I

8  think it's extremely unlikely.  We looked now in two cases.

9         THE COURT:  All right.  And then finally, perhaps

10  not finally --

11         MS. PRESTA:  There is a promissory estoppel claim at

12  Count VI, your Honor.

13         THE COURT:  Well, you tell me, what's the deficiency

14  in the promissory estoppel pleading?

15         MS. PRESTA:  Well, our initial argument is that a

16  prima facie case has not been stated.  Mr. Bielata's response

17  to that is that his taking leave was one of, if not the reason

18  for his termination.

19         THE COURT:  I'm sorry.

20         MS. PRESTA:  Mr. Bielata's response is that taking

21  leave pursuant to a representation that we have policy similar

22  to the FMLA led to his termination.  So reviewing the

23  complaint, it may be sufficient to state a prima facie case.

24  Subject to that, however, is the fact that, again, in the case

25  law which permits the application of promissory estoppel to an


11


1  FLMA claim, very limited, narrow circumstances.  In each of

2  those cases, your Honor, we talk about and set forth each of

3  them in our brief.  The employer was without question subject

4  to the FMLA.

5        THE COURT:  Then you didn't need promissory

6  estoppel?

7        MS. PRESTA:  Well, promissory estoppel was used

8  by -- you are estopped from saying you could go on leave and

9  then for 10 days and then require them to come back in five.

10  It was used as after the employer was clearly subject to the

11  FMLA pursuant to their 50 employee prerequisite.

12        THE COURT:  Let me just ask a hypothetical.  I

13  looked at those cases and know what they say.  If the elements

14  of promissory estoppel would be that a promise is made that one

15  would expect would induce some type of act or forbearance; and

16  the promisee actually took action or refrained from taking it;

17  and then injustice can only be avoided by enforcing the

18  promise.  If the pleading here, although it's really set forth

19  better in the brief than it is in the pleading, I'm not sure

20  it's set forth in the pleading adequately, is that by virtue of

21  their handbooks or discussions with their employees, employees

22  were led to believe that they were entitled to the protections

23  of the FMLA.  Which, by the way, is a squirrel you chased up

24  the tree, but I don't think it's germane to the discussion.

25  But in reliance on that, he allegedly stayed out longer than he

12

1  perhaps otherwise would, in reliance on the alleged coverage

2  protection.  And yet he was fired, his firing was in whole or

3  in part related to his staying out.  That makes out a prima

4  facie promissory case, doesn't it -- even though Mr. Morton

5  doesn't think so in the back of the courtroom?

6          MS. PRESTA:  Your Honor, the difference here is that

7  the argument or the allegation in the complaint is that

8  promissory estoppel entitled him to FMLA remedies.

9          THE COURT:  I disagree with that.  It may entitle

10  him to reinstatement, but it does not entitle him to the whole

11  panoply of FMLA remedies.

12          MS. PRESTA:  That is what is alleged in the

13  complaint, and one of the reasons for our objections.

14          THE COURT:  Maybe we're at cross purposes.  In my

15  view it would entitle him to the equitable remedy of

16  reinstatement, but nothing else; do you agree with that?

17          MS. PRESTA:  I do not, your Honor.

18          THE COURT:  But if that's as much as you can get,

19  you'll take it.  What else do you want to say?

20      MS. PRESTA:  Your Honor, again, not to beat the dead

21  horse, but the cases which do apply promissory estoppel and

22  FMLA were dealing with entitlement to leave and assumed or knew

23  that the employer was already subject to the FMLA.

24      THE COURT:  And I agree with you, by the way, that

25  the cases you cited on the proposition that there is a


13


1  jurisdictional component to coverage under the FMLA, you can't

2  stipulate your way into it, it is what it is.

3      MS. PRESTA:  To do otherwise would controvert

4  Congress's intent in enacting those prerequisites.

5      THE COURT:  We wouldn't want to do that.  Finally,

6  this question of individual liability, I don't think I need to

7  hear anything on that, I know what the law is on that.

8      MS. PRESTA:  Judge Cohill's opinion in that regard

9  is very helpful, I would point the court to that.

10      THE COURT:  I always listen to what Judge Cohill has

11  to say.

12      MS. PRESTA:  So do I, your Honor, thank you.

13          MR. COLE:  Good morning, your Honor.

14          THE COURT:  Mr. Cole.

15          MR. COLE:  Jeff Cole representing Raymond Bielata,

16  who is here with me in court today.  If you'd like, I can try

17  to respond to the points that the court raised.

18          THE COURT:  Let's start with the FMLA business here.

19  They're a private employer, I don't see how they are possibly

20  not a private employer?

21          MR. COLE:  It sounds that way under the C.F.R.

22  factors.  The thing that troubles me a little bit is that we're

23  so early in this proceeding, I don't really --

24          THE COURT:  You can't put stripes on a horse or take

25  them off a zebra, it's going to be what it's going to be.


                              14


1           MR. COLE:  What I'd like to ask the court to

2   consider is there may be other relevant factors that we don't

3   know about yet.

4           THE COURT:  I can't imagine them.  You tell me, I'm

5   willing to keep an open mind?

6           MR. COLE:  Well, what I'm referring to is the fact

7    that this agency is completely publicly funded.

8         THE COURT:  Doesn't matter.

9         MR. COLE:  I realize it's a rather black and white

10   situation, they don't have 50 employees.

11        THE COURT:  That's why I knew the key to this was to

12   get a definition of public agency, which did not appear in any

13   brief.  And that's what it says.  So let's go on and talk about

14   some other things.  And I'm not being critical because as the

15   plaintiff oftentimes the more you can throw against the wall

16   and that which sticks is better for you.  But this Erie County

17   Human Relations Ordinance, this has come up before, I just

18   don't think -- I'm hard pressed to see how there's a cause of

19   action here, I never heard of such a thing.  You have the PHRA,

20   you have the EEOC, you have the language of that thing which

21   apparently talks about housing practices, I have no idea who

22   drafted it and I'm not going to be critical of someone in

23   abstentia, but why do you even need it.  Assuming that there is

24   a private cause of action, which I am almost certain that there

25   is not?

15

1      MR. COLE:  The reason why we need it is that the

2   Ordinance allows for punitive damages.  And that is a remedy

3   that is available under some of our other causes of action and

4   is not under others.  That's a big remedy, obviously.  It could

5   end up being a lot of benefit to Ray Bielata financially, after

6   he's been striped of his livelihood.  Also, it has social

7   utility in that if a jury determines that this agency has

8   intentionally violated the law, then they can do something

9   about it to try to deter that kind of conduct in the future.

10  We have tried to plead that these actions were very malicious,

11  such that punitives could be awarded in the discretion of the

12  jury.  So it's not a meaningless type of thing.

13      THE COURT:  Can you get punitive damages under the

14  PHRA?

15      MR. COLE:  Yes.

16      THE COURT:  Under the PHRA?

17      MR. COLE:  Yes.

18      THE COURT:  Well, you can only get them once if

19  you're going to get them.  So why, and this doesn't define

20  whether there's a cause of action or not, I'm just -- it really

21  falls under the category of maybe muddying the waters.  You

22  already have a remedy under a demonstrably viable claim.  So

23  where does this get you?

24          MR. COLE:  I don't know if the Human Relations Act

25  claim will survive summary judgment.


16


1          THE COURT:  Well, if it wouldn't, the Erie County

2  Human Relations Act most assuredly wouldn't, either.

3          MR. COLE:  I don't know, I think maybe what my point

4  is what is the harm in leaving this cause of action viable.

5          THE COURT:  Have you found any cases on it?

6          MR. COLE:  No, I don't think there have been any on

7  this.

8          THE COURT:  I wonder why?

9          MR. COLE:  My take is there can't be a right without

10  a remedy.

11          THE COURT:  That happens all the time.  Look at the

12  zillions of cases out there where court's scratch their heads

13  as to whether there's an implied cause of action under a

14  statute.

15          MR. COLE:  I think by the words of this Ordinance

16   there is absolutely no question that a cause of action is

17   intended.

18        THE COURT:  Could someone in Philadelphia, who got

19   their hands on the local Erie County Ordinance, bring a lawsuit

20   anywhere within the Commonwealth on the heels of this Erie

21   County Ordinance passed by who knows who?

22        MR. COLE:  No, because the Erie County Ordinance

23   applies by its terms in Erie County.  The one example I can

24   give you of local Human Relations Ordinances sometimes going

25   further than state ordinances, is in the case of employment


17


1   discrimination against homosexuals.  Who are not protected

2   under Title VII, any federal employment statute or the PHRA.

3   But some localities have said we're to going protect them.

4   Erie County did so.

5        THE COURT:  Is there a private cause of action under

6   that Ordinance?

7        MR. COLE:  Well, it's the same Ordinance.  It

8   forbids employment discrimination on the basis of sexual

9   orientation.  I don't know why the local Commission and County

10    Council would enact an ordinance if there were no --

11         THE COURT:  I don't know how a local Commission like

12    this can trump the state, can trump the PHRA, I just don't know

13    how that can happen -- in terms of dictating what available

14    remedies are in court.

15         MR. COLE:  The state Human Relations Act

16    specifically enables local Human Relations Commissions and I

17    believe, I don't want to say this with certainty, local Human

18    Relations Ordinances.  So this is something that is

19    contemplated.

20         THE COURT:  What I may end up doing is what I did in

21    that other case, is for all intents and purposes express the

22    opinion that I doubt that there is a cause of action here, but

23    under the theory that a little more time may develop a little

24    more case law, let it go, and then leave defense counsel bring

25    this on by way of motion for summary judgment, at which time it


18


1    will almost surely die.  I don't think you have a Medical Leave

2    Act claim per se.  But tell me about your promissory estoppel

3    claim?

4          MR. COLE:  I believe we have stated a prima facie

5    case.

6          THE COURT:  I think it may be set forth in some form

7    or fashion in the complaint, but what representations were

8    made, in what manner were they made to your client that the

9    Crime Victim Center was observant or bound by the provisions of

10   the FMLA?

11         MR. COLE:  They used FMLA forms titled as such to

12   apply for leave.

13         THE COURT:  Why did they do that?

14         MR. COLE:  I don't know, that's where we're at

15   somewhat of a disadvantage dealing with this motion so early in

16   the proceedings.  We haven't done discovery.  I don't believe

17   they have a written employee handbook anymore, they converted

18   to a closed system, computer version.  Which we don't have.

19   But I believe, without being able to represent it clearly, that

20   the handbook talks about FMLA.  So there were statements by the

21   employer, oral statements as well, that FMLA was available.

22   And you can see why even here today where we have some

23   questions as to whether they're a public or private employer, I

24   think within the agency they felt like they're a part of Erie

25   County because they deal with Erie County for their funding.

19

1   So I think it was a reasonable belief that they were covered by

2   FMLA, he relied on it to his detriment.  I think those cases

3   that say that you can only make out a claim for promissory

4   estoppel with FMLA, where the employee is eligible for the

5   Act's protection in the first place is not very good reasoning.

6         THE COURT:  Promissory estoppel is intended to put

7   you in the position you would have been had you not

8   detrimentally relied?

9         MR. COLE:  Right.

10        THE COURT:  The only remedy that I can see would be

11   reinstatement.  Are you contending that you would get the other

12   panoply of remedies that would otherwise be available?

13        MR. COLE:  I don't think so.  I just think it goes

14   to the inequity in firing him perhaps because he relied on his

15   FLMA protection.

16        THE COURT:  Now, this is more of a practical

17   question, in all of these, in many employment cases when I see

18   them pled up like this, I ask it.  You've got an age claim, you

19   have an ADA claim, have you a FMLA claim, and this is just a

20  personal observation -- when there typically is one claim and

21  the rest of it is the dog and the rest of the claims are the

22  tail, it always strikes me that it dilutes the pleading because

23  you end up not knowing what really is driving what.  This isn't

24  an FMLA claim, this is an age claim, isn't it?

25          MR. COLE:  Age and disability I agree are much more

20

1  predominant.  That's where we have our statements, direct

2  evidence of discrimination.  We don't have any statements

3  directly based on FLMA.  I would agree with that, your Honor.

4  I felt that, my preference is to plead these things so that

5  once I can get an answer to the complaint and take some

6  discovery, I can say, well, this claim doesn't make sense.

7          THE COURT:  Let me see what we missed.  You contend

8  there is individual liability under the ADA or ADEA, I haven't

9  found a case?

10          MR. COLE:  Yeah, the case law isn't very helpful.

11          THE COURT:  Depends on what side you're on.

12          MR. COLE:  Well, without a prohibition, expressed

13  prohibition of the statute, I, as the plaintiff, assume that

14  there is individual liability.

15       THE COURT:  All right, thank you.

16       MR. COLE:  If I can make a point, your Honor, as far

17  as individual versus employer liability, respondeat superior.

18  There's been this disavow of the actions of Ms. Porowski by the

19  board, disavow of knowledge that Mr. Bielata was over 40 or had

20  a disability.

21       THE COURT:  What do you mean a disavow -- I'm not

22  sure what you mean?

23       MR. COLE:  In the administrative proceeding, the

24  board members or a board member alleged on behalf of the board,

25  that the board did not know that Ray Bielata was over 40.  That


21


1  the board did not know that Ray Bielata had a disability.  And

2  I interpreted that as the board saying it was our decision to

3  fire Ray Bielata, it was not Sue Porowski's decision.  And we

4  didn't even know he was in the protected class, so how could it

5  be discrimination.  Then really the board acts in all other

6  ways through Sue Porowski.  So it strikes me if the board is

7  going to try to wash its hands of this by saying we're not

8   responsible, it makes sense to have Sue Porowski remain in the

9   suit at least, again, until we can see what their defense is,

10  what positions they take on the record.

11          THE COURT:  I disagree with that, you can't leave

12  somebody in a suit and find out what the person knows through

13  discovery without them being in the suit.  Finally, on the

14  question of the disability, refresh my recollection again, what

15  it was, and then I'll ask you how it qualifies as a substantial

16  impairment within the meaning of the Act because I am

17  suspicious as to whether it is?

18          MR. COLE:  It is a knee condition.

19          THE COURT:  Which resolved?

20          MR. COLE:  Well, no.  Even to this day Mr. Bielata

21  has periods where he has difficulty standing, sitting, climbing

22  stairs.

23          THE COURT:  Did it substantially interfere with his

24  ability to work?

25          MR. COLE:  He was able to work, with the

22

1   accommodation of being allowed to use the cane.  His

2  disability --

3      THE COURT:  Who would prevent him from it?

4      MR. COLE:  I don't know, that was the only

5  accommodation he required.  So it was apparent that he was

6  having physical problems.

7      THE COURT:  Finally, how old was the person he was

8  replaced by?

9      MR. COLE:  In his 30s, less than 40.

10      THE COURT:  All right, thank you.

11      MR. COLE:  Thank yo, your Honor.

12      THE COURT:  Let me ask you just a couple additional

13  questions and then you can tell me anything else you want to.

14  If you know and if you don't know, that's okay, why did your

15  client hold itself out as FLMA bound?

16      MS. PRESTA:  I believe its intent and, your Honor, I

17  think the testimony is going to be needed on this point from

18  the individuals themselves.  But it is my understanding that

19  they intended to adopt a policy similar to the FMLA, but not in

20  any way subject themselves to the FMLA.  But they looked at it,

21  the same forms, they leave the title on it, the same as I saw

22  in a number of cases where employers weren't subject to the

23  FMLA, but they used FMLA forms intending to adopt similar

24  employee policies.

25          THE COURT:  Were they in the handbooks or something


                                    23


1  like that?

2          MS. PRESTA:  It was on the form, I would have to

3  review the handbook, your Honor.

4          THE COURT:  Does that make a breach of contract

5  claim?

6          MS. PRESTA:  No.

7          THE COURT:  Why not?

8          MS. PRESTA:  Because an employee handbook nor an

9  application for benefit form does not form a contract between

10  an employer and employee.

11          THE COURT:  Is there anything else you want to tell

12  me before I put an order on the record?

13          MS. PRESTA:  No, there isn't.  Thank you, your

14  Honor.

15          THE COURT:  All right.  This is an order.

16                          ORDER

17          Presently pending before the court is a motion to

18   dismiss and/or partially dismiss various counts of the

19   plaintiff's complaint. I'll address them seriatim.

20          In Count I the defendant moves to dismiss the claim

21   for emotional distress under the ADEA. Plaintiff concedes that

22   emotional distress damages are not recoverable, so the motion

23   is granted in that respect.

24          The defendant also moves to dismiss any claim for

25   punitive damages under the same count. I'm of the opinion that

24

1   punitive damages are not recoverable under the ADEA. See

2   Johnson_v._Al_Tech_Specialties_Steel_Corp., 731 F.2d 143
     _____ __ __ ____ _____ _____ _____

3   (2nd Cir. 1984). Franzoni_v._Hartmarx_Corp., 300 F.3d 767,
                      _____ __ _____ _____

4   (7th Cir. 2002). Tumolo_v._Triangle_Pacific_Corp., 46
                     _____ __ _____ _____ _____

5   F.Supp.2d 410 (E.D.Pa. 1999).

6          In Count IV the plaintiff alleges violations of the

7   Erie County Human Relations Ordinance. The defendant argues

8   that under the terms of the Ordinance there is no private cause

9   of action. Although, my very strong tentative opinion is that

10   is correct, I am going to do what I did in the previous Fenell

———

11   case and deny the motion with respect to the Erie County Human

12   Relations Ordinance, without prejudice to revisit it via a Rule

13   56 motion and perhaps with more fully developed case law.

14   Although, I will say in all likelihood whether there's anymore

15   or not that sheds any light on this, it is likely in the

16   extreme that that claim will fail somewhere down the road.

17          With respect to the contention that under Count V

18   that there's been a violation of the FMLA.  The FMLA, of

19   course, is inapplicable with respect to private employers

20   unless they employee 50 or more employees.  See 29 U.S.C.

21   Section 2611(4)(A)(i).  As discussed more fully at oral

22   argument, I am of the opinion that the Crime Victim Center of

23   Erie County, Inc., is not a public agency as that term is

24   defined at 29 C.F.R. Section 825.109(b).  It is undisputed, by

25   virtue of the affidavit that has been filed, that the Crime

25

1   Victim Center of Erie County, Inc., employs substantially less

2   than 50 or more employees.  Consequently, it does not meet the

3  jurisdictional threshold.  The motion is granted in that

4  respect.

5        Defendant moves to dismiss Count VI, which is a

6  state law promissory estoppel claim.  The elements of a

7  promissory estoppel claim, as we discussed at argument, are

8  that that the promisor made a promise that he should have

9  reasonably expected would induce action or forbearance; that

10  the action that was actually taken in reliance on the promise;

11  and injustice can only be avoided by enforcing the promise.

12  Here, the complaint is somewhat unartfully drafted insofar as

13  the promissory estoppel claim is concerned, and I think

14  parenthetically the nature of the claim is laid out better in

15  the brief, I'm going to grant leave to replead the promissory

16  estoppel claim to set forth the requisite elements.

17        There is a request that insofar as there is a claim

18  against the private individuals under the ADEA and the ADA,

19  that those claims be dismissed.  I'm of the opinion that there

20  is no, based on the case law, no personal individual liability

21  under the ADA or ADEA, and several courts have so concluded.

22  See Butler_v._City_of_Prairie_Village, 172 F.3d 736 (10th Cir.

23  1999).  Holocheck_v._Luzerne_County_Head_Start,_Inc., 385

24  F.Supp.2d 491 (M.D.Pa. 2005).  The individual liability claims

25   under the ADA and ADEA are dismissed.


26


1       Insofar as the individual liability claim under the

2  Erie County Human Relations Act is concerned, I will revisit

3  that at a later point when that issue comes before me again.

4       I think that's it.  So for the reasons previously

5  set forth on the record, the motion to dismiss is granted in

6  part and denied in part; and leave is granted to replead within

7  10 days the promissory estoppel claim. Let's go off the record

8  here.

9       (Discussion held off the record.)

10      MS. PRESTA:  Your Honor, may I have a quick

11  clarification with regard to the order.

12      THE COURT:  Yes.

13      MS. PRESTA:  In Count I you were referencing

14  emotional distress is conceded.  To the extent that pain and

15  suffering is some kind of different or an additional claim --

16      THE COURT:  It's not.

17      MS. PRESTA:  It would be included.

18          THE COURT:  I would presume that one who is

19    experiencing pain and suffering is emotionally distressed and

20    perhaps vice-versa, it's all part of the same thing.

21          MS. PRESTA:  All right.

22          THE COURT:  Let me see you in chambers.

23          (Whereupon, at 9:35 a.m., the proceedings were

24    concluded.)

25                    - - -


                              27


1              C E R T I F I C A T E

2

3

4

5      I, Ronald J. Bench, certify that the foregoing is a

6    correct transcript from the record of proceedings in the

7    above-entitled matter.

8

9

10

11

12  _____

13  Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25